```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF LOUISIANA


BETTY J. VARDIN                           CIVIL ACTION

VERSUS                                    NO: 14-2729

MAGELLAN HEALTH, ET AL.                   SECTION: "J"(2)
```

**ORDER & REASONS**

Before the Court is a *Motion for Summary Judgment* filed by Defendants[1] (R. Doc. 250) and an opposition thereto filed by Plaintiff, Betty Vardin (R. Doc. 252). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

**FACTS AND PROCEDURAL BACKGROUND**

Through the duration of this litigation the Court has struggled to form a coherent narrative from the factual allegations contained in Plaintiff's complaint. *See* (R. Doc. 133.) As to the Defendants in this motion, however, it appears that Plaintiff's complaints stem from her May 17, 2013, interaction with an elderly man, Newton Bergeron, who allegedly made threats against Plaintiff and later allegedly justified those threats by stating that Todd Duplantis, former Chief of the Houma Police Department, told him

---

[1] Defendants include: Former Chief of Police Todd Duplantis, Chief of Police Dana Coleman, Officer Kyle Faulk, Officer Milton Wolf, Officer Richard Hunter, Officer Jeffrey Jackson, Officer Christina Payne, Officer Georgie Jones, Officer Kurt Wolfertz, Officer Jerome Deville, Officer Dawn Celestine, and Internal Affairs Officer Terry Buquet.

to kill her. In response to these threats, Plaintiff called the Houma Police Department. *See* (R. Doc. 250-6.) Defendant Officer Richard Hunter and Defendant Officer Jeffery Jackson responded to Plaintiff's call and came to Plaintiff's residence. *See id.;* (R. Doc. 250-7.) At the scene, the officers found Mr. Bergeron unable to explain himself as if he was suffering from a mental ailment.[2] Plaintiff requested that Mr. Bergeron be arrested, however no arrests were made and no citations issued. *Id.* Ultimately, Officer Hunter contacted Mr. Bergeron's son who came and took Mr. Bergeron home. *Id.* Officer Hunter and Officer Jackson were never informed during their interactions with the Plaintiff that she believed Defendant Todd Duplantis sent Mr. Bergeron to kill her.

Just two days later, on May 19, 2013, Plaintiff contacted the Houma Police Department alleging that Mr. Bergeron was stalking her. *See* (R. Doc. 250-8.) This time Defendant Officer Brandon Lovell responded to Plaintiff's call. *Id.* Plaintiff asserted that Mr. Bergeron was passing her house in a vehicle repeatedly, and that she feared for her life. *Id.* Officer Lovell contacted Mr. Bergeron's son again and no citations or arrests were made. *Id.* Plaintiff complains that she received little to no response from the Houma Police Department as to this incident.

---

[2] The officers spoke to Mr. Bergeron's son who believes that Mr. Bergeron may be suffering from a mental ailment.

2

On July 24, 2013, Plaintiff appeared before the Terrebonne Parish Council to complain about the Houma Police Department and its officers. *See* (R. Doc. 250-9.) Plaintiff explained to the council that she was having a problem with a suspicious person—presumably Mr. Bergeron—stalking her family, and that she asked for the Houma Police Department's assistance but received little or no response. *Id.* Plaintiff also requested that the council provide her with the police department's "chain of command." *Id.* The council referred Plaintiff to Defendant Dana Coleman, who at the time was Houma Police Department's Head of Detectives. Defendant Coleman states that he never spoke to the Plaintiff after July 24, 2013, and that there is no departmental record of Plaintiff calling for him after that date. *See* (R. Doc. 250-10.)

On December 2, 2013, Defendant Officer Kristina Payne was contacted by Plaintiff's neighbor, Lucille Tillman, who complained that she was being harassed by Plaintiff constantly calling the police with unfounded complaints. *See* (R. Doc. 250-11.) On December 23, 2013, Plaintiff again contacted the Houma Police Department to complain that Mrs. Tillman and her husband were burning wood in their yard causing to smoke to flow into her house. *See* (R. Doc. 250-12.) Officer Nicholas Pellegrin spoke to Plaintiff over the phone about this incident. *Id.* Officer Pellegrin informed Plaintiff that it was not illegal for the Tillmans to burn wood in

their yard and advised that the parties come to a mutual agreement. *Id.* No arrests were made and no citations were issued.

On December 30, 2013, Defendant Officer Payne was advised by her superior, Defendant Kyle Faulk, to contact and advise Plaintiff that if she filed any other unsubstantiated reports against the Tillmans that she would be issued a summons or jailed. *See* (R. Doc. 250-11.) No arrests were made and no citations were issued. On January 2, 2014, Defendant Officer Brandon Lovell responded to a report by Plaintiff that the Tillmans were operating a meth lab and allowing smoke to blow into her yard. *See* (R. Doc. 250-8.) Officer Lovell went to the Tillmans' home, did not find any signs of a meth lab, and did not issue a citation or make an arrest. *Id.*

On January 7, 2014, Officer Pellegrin executed an Order of Protective Custody (OPC)[3] on Plaintiff and transported her to Terrebonne General Medical Center. (R. Doc. 250-12.) Officer Pellegrin reported that the OPC was executed without incident and that Plaintiff was transported directly to the hospital. *Id.* While at the hospital, Plaintiff underwent a psychiatric evaluation and later released. *See* (R. Doc. 250-14.) On March 5, 2014, Defendant Officer Kurt Wolfertz and Defendant Officer Jerome Deville, executed another OPC on Plaintiff. *See* (R. Doc. 250-15.) Officer Wolfertz transported Plaintiff to Dr. Pamela Dupont, P.N.P.,

---

[3] *See* La. Rev. Stat. § 28:53.2.

located in Gray, Louisiana which was in accordance with the OPC. *Id.*

On May 7, 2014, Plaintiff contacted the Houma Police Department complaining that fumes from her neighbors' car were entering her bedroom. (R. Doc. 250-21.) Defendant Officer Georgie Jones responded to the complaint and informed Plaintiff it was usual for fumes to exit a vehicle when a vehicle is started. *Id.* Plaintiff did not want to speak with Officer Jones anymore and the call ended. Once again, no citations were issued and no arrests were made.

On December 2, 2014, Plaintiff filed a Petition for Damages naming numerous individuals as defendants. (R. Doc. 1.) Liberally construed, it appears that Plaintiff alleges that Defendants violated her constitutional rights by not further investigating either the Newton Bergeron incident or her complaints about the Tillmans. *See* (R. Doc. 1; R. Doc. 252.) Plaintiff also appears to allege that Defendants violated her constitutional rights by executing the OPC. (R. Doc. 252.) Finally, Plaintiff argues that the Defendants discriminated against her because she is a Native American. (R. Doc. 1 at 10.) On December 14, 2016, Defendants filed the present *Motion for Summary Judgment*. (R. Doc. 251.) In short, Defendants argue that Plaintiff has not produced any evidence that Defendants violated any of her constitutional rights nor have Defendants discriminated against her. *Id.* Further, Defendants

5

argue that as police officers they are entitled to qualified immunity from Plaintiff's claims. *Id.* Defendants also argue that several of Plaintiff's "claims" have prescribed. *Id.* Plaintiff filed a timely Opposition to Defendants' motion. (R. Doc. 252.) Defendants' motion is now before the Court on the briefs and without oral argument.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

**DISCUSSION**

Defendants first argue that any alleged cause of action in tort or pursuant to 42 U.S.C. § 1983 that pre-dates December 2, 2013, is barred by Louisiana's one-year prescriptive period. (R. Doc. 250 at 2.) Plaintiff filed her Complaint on December 2, 2014. (R. Doc. 1.) Because there is no federal statute of limitations for § 1983 claims, district courts apply the personal injury claims limitations period applicable in the forum state. *Charles v. Galliano*, No. 10-811, 2010 WL 3430519, at *2-3 (E.D. La. Aug. 26, 2010) (citing *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994)). Pursuant to Louisiana Civil Code article 3492, the prescriptive period for personal injury or delictual actions is one year. *Id.* Accordingly, any alleged cause of action in tort or pursuant to 42 U.S.C. § 1983 that pre-dates December 2, 2013 is barred by Louisiana's one-year prescriptive period. It appears that there were three acts that Plaintiff alleges occurred prior to December 2, 2013. On May 17, 2013 Officers Richard Hunter and Jeffery Jackson responded to complaints made by Plaintiff with regard to her neighbor, Newton Bergeron, allegedly making threats against her. On May 19, 2013, Officer Brandon Lovell responded to a complaint made by Plaintiff with regard to Mr. Bergeron allegedly stalking her. Plaintiff believes that Newton Bergeron was sent to kill her by Todd Duplantis. And on July 24, 2013, Plaintiff appeared before the Terrebonne Parish Council to complain about

8

the Houma Police Department and its officers' failure to arrest Newton Bergeron. Plaintiff was referred to Houma Police Detective Dana Coleman. In all, Plaintiff argues that the police did not properly investigate her complaints which led her to file this lawsuit. Even assuming that these are viable claims, they must be dismissed because these events occurred more than one year prior to the filing of this lawsuit. Further, Plaintiff has produced no evidence to substantiate her claim that Todd Duplantis placed a "hit" on her and no evidence that Defendant Duplantis violated her constitutional rights in any other manner. Accordingly, Plaintiff's claims against Officers Richard Hunter, Jeffery Jackson, Dana Coleman, and Todd Duplantis are dismissed.

Defendants also argue that they are entitled to the defense of qualified immunity as to all of Plaintiff's remaining claims. (R. Doc. 250-1 at 10.)  A qualified immunity defense "serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005) (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 456 (5th Cir. 2001)). A qualified immunity defense alters the usual summary judgment burden of proof. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense

9

by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law. *Id.* The plaintiff bears the burden of negating qualified immunity, but all inferences are drawn in his favor. *Id.* The qualified immunity defense has two prongs: whether an official's conduct violated a constitutional right of the plaintiff; and whether the right was clearly established at the time of the violation. *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). A court may rely on either prong of the defense in its analysis. *Id.*

It appears that Plaintiff is asserting that she was hurt, physically and emotionally, when Defendant Officers Kurt Wolfertz, Dawn Celestine and Jerome Deville executed an Order of Protective Custody and transported her to a medical facility. (R. Doc. 252 at 5.) Further, Plaintiff argues that Defendant Terry Buquet fraudulently placed the coroner's name on the Order of Protective Custody and failed to investigate the officers in this case. (R. Doc. 252 at 8.) These Defendants argue that they were acting pursuant to Louisiana Revised Statute 28:53.2 which permits a parish coroner or judge to order that a person be taken into protective custody and transported to a treatment facility for examination. (R. Doc. 250-1 at 10). Plaintiff has not produced any evidence that Defendant Buquet fraudulently placed the coroner's name on the Order of Protective Custody and has failed to produce any evidence that these Defendants violated her constitutional

10

rights. Accordingly, Plaintiff's claims against Officers Kurt Wolfertz, Dawn Celestine, and Jerome Deville are dismissed.

Plaintiff also argues that Officers Kristina Payne, Kyle Faulk, and Georgie Jones threatened that if she did not stop calling the police with unsubstantiated claims against her neighbors that she may be cited or arrested. (R. Doc. 252 at 4-5; R. Doc. 250-1 at 10.) Again, Plaintiff has failed to produce any evidence that these Defendants violated her constitutional rights. Accordingly, Plaintiff's claims against Officers Kristina Payne, Kyle Faulk, and Georgie Jones are dismissed.

Plaintiff argues that Defendants discriminated against her because she is a Native American. (R. Doc. 1 at 10.) Again, Plaintiff has produced no evidence that any actions taken by the Houma Police Department or any of its officers was the product of discrimination. Accordingly, this claim is dismissed. Finally, Defendant has failed to articulate how Defendant Milton Wolf violated any of her constitutional rights or caused her any harm. Accordingly, Plaintiff's claims against Milton Wolf are dismissed.

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' *Motion for Summary Judgment* (R. Doc. 250) is **GRANTED**. Plaintiff's claims against Former Chief of Police Todd Duplantis, Chief of Police Dana Coleman, Officer Kyle Faulk, Officer Milton Wolf, Officer Richard Hunter, Officer Jeffrey Jackson, Officer Christina Payne, Officer Georgie Jones, Officer Kurt Wolfertz, Officer Jerome Deville, Officer Dawn Celestine, and Internal Affairs Officer Terry Buquet are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana this 4th day of January, 2017.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE